IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| In re: <br><br> PRESLEYLAND SPEEDPARK, LLC <br><br> Debtor | CASE NO. 19-71441-AKM-7 |

**SOUTHEAST GRINDING AND GROOVING, LLC'S
VERIFIED EMERGENCY MOTION TO DISMISS PURSUANT TO 11 U.S.C. 1112(B)**

Southeast Grinding and Grooving, LLC ("SEG") requests the Court dismiss this case, and in support states and alleges:

1.	11 U.S.C. § 1112(b)(1) provides:

Except as provided in paragraph (2) and subsection (c), **on request of a party in interest, and after notice and a hearing, the court shall** convert a case under this chapter to a case under chapter 7 **or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate. [Emphasis supplied.]

2.	This is the third attempt by Reno Fontana and related entities to use the bankruptcy courts to stop a duly ordered sheriff's sale of the property known as the Chandler Speedway located in Evansville, Indiana.

3.	Harold and Phyllis Baker (the "Bakers") owned the Chandler Speedway in Chandler, Indiana. SEG performed work on the Speedway. After SEG was not paid for the work, SEG filed a mechanic's lien and then a lawsuit to foreclose on its lien. In addition to SEG's mechanic's lien, Peoples Trust and Savings Bank holds a first mortgage lien against the property.

4.	On December 4, 2018, SEG and the Bakers reached a settlement agreement and the terms of an agreed judgment of foreclosure. Two weeks later, the Bakers surreptitiously sold the

1

Chandler Speedway to Presleyland Speedpark, LLC ("Presleyland"), a single-member, single asset LLC owned by Reno Fontana ("Fontana"). The purchase price was purportedly $350,000, however, the Bakers have not received any payment from Mr. Fontana or Presleyland except for a $10,000 earnest money deposit paid to the Bakers over two (2) years ago. The State Court subsequently ruled that the Bakers were in contempt of court as a result of the transfer of the Speedway to Presleyland.

5. Notwithstanding the conveyance, SEG moved forward with the court-ordered foreclosure sale, using an auctioneer, paying for advertising, and setting a sale date for March 20, 2019 at 10:00 am. On the eve of the sale, Presleyland filed a Chapter 11 bankruptcy petition to prevent the sale of the racetrack. *See* In Re Presleyland Speedpark, LLC, Case No. 19-70310-AKM-11. On the Trustee's Motion, Presleyland's bankruptcy case was dismissed on June 24, 2019, for failure to provide proof of adequate insurance to operate a racetrack.

6. SEG set a second sale date for September 10, 2019 at 10 a.m. Mr. Fontana filed a Chapter 13 bankruptcy case less than 24 hours before that sale, thereby canceling the sale for a second time. *See* In Re Reno Fontana, Case No.19-71144–AKM-13. SEG filed an emergency motion for relief from stay, which was granted on September 24, 2019. Fontana immediately filed an Emergency Motion to Dismiss the Chapter 13 case stating that he "must legally pursue in Indiana State Court all available options to pay off the judgment to SEG & Peoples Bank and <u>halt an anticipated Praecipe for Sale</u>." (Dkt. 43; emphasis added)

7. SEG set a third sale date for November 12, 2019 at 1:00 PM. Mr. Fontana filed motions in the state court requesting the state Court to stop the sale. At a hearing on October 30, 2019, the Court denied those motions.

8. Presleyland has now sought bankruptcy relief in this Court for the third time and in the final hours for the sole purpose of stopping the sale of the Chandler Speedway.

9. Mr. Fontana could have sought relief in the first Presleyland Chapter 11 case by filing a Motion for Relief and paying $1,167 as a reopening fee, plus the procuring proper insurance as previously required in Case No. 19-70310-BHL-11. Instead, Presleyland filed this bankruptcy so that it could get an immediate automatic stay without satisfying the requirements imposed by the Court in the first Chapter 11 case.

10. In his response to SEG's Motion to Reopen the Chapter 13 case and for sanctions, Mr. Fontana admits his true purpose for all of his actions: "If the court granted a bar to SEG preventing Presleyland Speedpark, LLC, from filing a second Federal Chapter 11 protection, SEG WOULD HAVE NO MOTIVATION OR INCENTIVE TO REACH A COMPROMISE AND SETTLEMENT WITH DEBTOR AND PRESLEYLAND SPEEDPARK, LLC."

11. No court proceeding should be allowed to be used for the sole purpose of gaining leverage in a settlement negotiation.

12. Nothing has changed since the last two bankruptcies were filed and dismissed. The Chandler Speedway is still the only asset of all three bankruptcies. Mr. Fontana has still not paid anything to the Bakers, SEG, or the bank. Mr. Fontana still has no money or firm financial commitments sufficient to pay the secured creditors or operate the Speedway. Although Mr. Fontana has put nothing of his own into the Chandler Speedway, he asks this Court to allow him more time to find what he has failed to find for over two (2) years: money to pay the secured creditors and operate the Speedway, including obtaining adequate insurance.

13. SEG incurs thousands of dollars of additional fees and expenses every time the sale

3

is cancelled. SEG will incur thousands more if Mr. Fontana is allowed to cancel the sale a third time.

14. Good faith is required when filing a Chapter 11 petition. *In the Matter of Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984). Good faith is absent when, like here, the Debtor's business plan is to start a new company rather than reorganize an existing business. *In re Castleton Associates Ltd. Partnership*, 109 B.R. 347, 350 (Bankr. S.D. Ind. 1989). There is an absence of a proper Chapter 11 purpose in this case because, rather than reorganize a going concern, the Debtor is an entrepreneur, with no money, who seeks forced financing for a new, speculative startup business of a kind it has never before started up or run;

15. There is a presumption of bad faith when the "new debtor syndrome" is present, like here when the instant Debtor acquired the property and then filed its first bankruptcy to avoid a settlement agreement and foreclosure sale agreed to by the property owners and ordered by the State Court. See *In re N.R. Guaranteed Retirement, Inc.* 112 B.R. 263, 272 (N.D. Ill. 1990).

16. Furthermore, the Debtor cannot rebut the presumption of bad faith due to the knowing pre-petition subversion of State Court orders, tortious interference with the contract between SEG and the Bakers, a conveyance done in secret, and participation in a fraudulent transfer.

17. Additionally, under 11 U.S.C. § 1112(b)(4)(A) cause for dismissal exists due to the complete infeasibility of debtor formulating an acceptable plan and the continuing risk and increasing liability of the estate and costs to SEG to pay for three (3) or more sheriff's sales and defend three (3) or more bankruptcies. As shown in the evidence presented in the first Chapter 11, the Debtor's lack of experience, absence of necessary skilled employees, absence of sponsors, lack

4

of working capital, absence of income since inception, and absence of knowledge concerning the requirements for properly operating a racetrack, there is no feasible possibility of a successful "reorganization" for Debtor's theoretical racing concept.

18. A bankruptcy court "has the power and the duty to implement an appropriate order to prevent the continuing abuse of the bankruptcy process by" Mr. Fontana. *In re Yimam*, 214 B.R. 463 (1997). 11 U.S.C. § 105(a) provides:

> § 105. Power of court. (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

19. In *Yiman,* the Court was faced with debtors that had filed several bankruptcies, all with the sole purpose of stopping a foreclosure sale of their home. The *Yiman* Court framed the issue this way:

> What then is the remedy to forestall the [debtors'] continuing abuse of the bankruptcy process? Through June 30, 1997, the [debtors] are said to be five (5) years in arrears in payments under the note secured by the deed of trust on their residence. Considering the [debtors] scheduled earnings, it is impossible for them to propose any plan in good faith that would enable them to retain their residence. Furthermore, a Chapter 13 plan based on a proposed sale of the property offers the same trap for the secured creditor, because the [debtors] would be free to dismiss that case at any time. 11 U.S.C. § 1307(b).

20. The Court ruled that pursuant to § 105(a), "The Bankruptcy Court had the authority to issue an in rem order that operated as an equitable servitude on property to preclude the debtor and his successors from taking advantage of the automatic stay of 11 U.S.C. § 362(a) for a period sufficient to enable the creditor holding the secured claim to consummate a foreclosure." *Td.; see also* 11 USC 362(d)(4).

21. The undisputed facts establish beyond any doubt that Mr. Fontana and his entity

5

Presleyland have abused and unless stopped will continue to abuse the bankruptcy process. This Court should immediately dismiss this case and allow the sale scheduled for November 12, 2019 to proceed.

22. The Court should also enter an order pursuant to 11 USC 362(d)(4) and find that SEG is "a creditor whose claim is secured by an interest in" real property, and "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved … transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval."

WHEREFORE, SEG prays for an order of this Court dismissing the Debtor's Chapter 11 case, finding that SEG is "a creditor whose claim is secured by an interest in" real property, and "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved … transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval," awarding SEG its fees and costs, and ordering such other and further relief as the Court deems just and equitable.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE.

*/s/ Mark E. Miller*
Mark E. Miller, Attorney No. 10458-82
mmiller@danks-danks.com
Danks & Danks
1 S.E. 9th Street – Suite 101
Evansville, Indiana 47708
(t) 812.426.1000
(f) 812.426.0751
Attorney for SEG

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 12, 2019, a copy of the foregoing APPEARANCE was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

KC Cohen  
Email: kc@esoft-legal.com  
Stacy M. Wissel  
Email: tr_wissel_ecf@sbcglobal.net

                                       */s/ Mark E. Miller*  
                                       Mark E. Miller